UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| MARCUS CURRY, | ) |
| Plaintiff, | ) |
| v. | ) NO. 2:20-CV-248 |
| KENNETH LARKINS et al., | ) |
| Defendants. | ) |

**ORDER AND REPORT AND RECOMMENDATION**

Plaintiff filed a Motion to Proceed *in forma pauperis* [Doc. 1]. The Motion is before the United States Magistrate Judge pursuant to 28 U.S.C. § 636, and the standing orders of this Court. Plaintiff is representing himself in this action.

The purpose of 28 U.S.C. § 1915 is to ensure that indigent litigants have meaningful access to the courts. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948); *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). For that reason, the statute allows a litigant to commence a civil or criminal action in federal court without paying the administrative costs of the lawsuit. *Denton v. Hernandez*, 504 U.S. 25, 27 (1992).

The Court's review of an *in forma pauperis* application is normally based solely on the affidavit of indigence. *See Gibson v. R.G. Smith Co.*, 915 F.2d 260, 262-63 (6th Cir. 1990). The threshold requirement which must be met in order to proceed *in forma pauperis* is that the petitioner show, by affidavit, the inability to pay court fees and costs. 28 U.S.C. §1915(a). At the same time, one need not be absolutely destitute to enjoy the benefit of proceeding *in forma pauperis*. *Adkins,* 335 U.S. at 342. An affidavit to proceed *in forma pauperis* is sufficient if it states that the petitioner cannot, because of poverty, afford to pay for the costs of litigation and

still pay for the necessities of life. *Id.* at 339. The decision to grant or deny such an application lies within the sound discretion of the Court. *Phipps v. King*, 866 F.2d 824, 825 (6th Cir. 1988).

In the present case, Plaintiff's Application to Proceed Without Prepayment of Fees and his economic status have been considered in making the decision of whether to grant leave to proceed *in forma pauperis*. The application sets forth grounds for so proceeding; therefore, the Application to Proceed Without Prepayment of Fees [Doc. 1] is **GRANTED**.

Because Plaintiff is an inmate in the Whiteville Correctional Facility, he is **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 220 West Depot Street, Greeneville, TN 37743, twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2). Additionally, the Clerk is **DIRECTED** to file the complaint without prepayment of costs or fees. *Gibson*, 915 F.2d at 262-63; *see also Harris v. Johnson*, 784 F.2d 222 (6th Cir. 1986).

Under the Prisoner Litigation Reform Act ("PLRA"), district courts must also screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are brought against a defendant who is immune. *See*, *e.g.*, 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1)-(2); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir.

2010). To survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Courts liberally construe *pro se* pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## I. Factual Allegations

In a Complaint for relief under 42 U.S.C. § 1983, filed on November 25, 2020, Plaintiff Marcus Curry claims that Hawkins County Sheriff's Office Lieutenant Greg Larkins, Deputy Brian Sanders, and Deputy Jesse Williams used excessive force against him and assaulted him. Specifically, on February 3, 2020, Plaintiff alleges that officers arrived at 914 Old Hwy 70 South in Rogersville, Tennessee to serve Plaintiff with an arrest warrant alleging he violated conditions of his parole. Officers knocked on the door for several minutes after arriving before issuing a warning that they were going to forcibly open the door. The mother of Plaintiff's child was also at the residence and yelled from a window to alert officers that Plaintiff was coming out. After five minutes elapsed, Plaintiff and his child's mother went to the home's kitchen and opened the "door that goes down stairs." Plaintiff states that at the same time, officers broke through the door with their guns drawn because he had not yet come out. It appears that the same door Plaintiff was opening is the one that officers were simultaneously kicking in but that is not fully clear from the Complaint. As the officers came in, Plaintiff threw a 20 oz. beer can which hit a wall and spewed on the officers as they came up the stairs into the residence with guns drawn.

Upon entering Plaintiff's residence, the group of officers directed Plaintiff to get on the ground. Plaintiff states that at this point he told officers he would comply, and the officers then grabbed him by both arms and took him to the ground. Plaintiff also states that he told the officers

that he "gave up" as they got him on the ground. Plaintiff alleges that despite him cooperating, officers then tasered him once in his lower right back, once in his left back, and once in his genital area.

After Plaintiff was tasered, he was placed in handcuffs. The Complaint next alleges that Lieutenant Larkins punched Plaintiff in the nose three times at which time Plaintiff states that he yelled to the mother of his child that he was being beaten. Around the same time, he recalls being hit in the left ear once by Deputy Jesse Williams at which point Plaintiff alleges that he lost consciousness for several seconds. Plaintiff asserts that when he regained consciousness, officers were lifting him from the floor as blood ran from his nose back onto the floor and his child's mother stood by screaming and crying. The officers then took Plaintiff out to a squad car and after he was placed in the car by Deputy Brian Sanders, Plaintiff asked him why the officers had hit him in the face. Plaintiff alleges that Deputy Sanders told him that it was because Plaintiff was wanted on the parole violation warrant.

Next, Plaintiff was transported to the Hawkins County Jail. At the jail, Plaintiff says he again asked Deputy Sanders about how he was treated during his arrest but claims that Deputy Sanders denied any knowledge at that point. Thereafter, Plaintiff received medical attention from a jailhouse nurse named Emma.[1] He told the nurse about his experiences during the arrest and asked that pictures be taken of the injuries to his face. According to Plaintiff, the nurse declined his request, saying it would interfere with what the officers were doing at the time. Plaintiff says that a sergeant in booking later asked Plaintiff whether he was okay to which he replied that he

---

[1] The nurse was not named as a Defendant.

had been beaten up by the "Hawkins County Sheriffs" during his arrest. Plaintiff now presents these facts for review by the Court.

## II. Legal Analysis

The Court must determine whether Plaintiff's § 1983 claim against the named officers of Hawkins County Sheriff's Department meets the minimum pleading standard set forth under the PLRA. 42 U.S.C. § 1983 creates a federal cause of action against any person acting under color of law who subjects or causes a plaintiff to be deprived of "any rights, privileges, or immunities secured by the Constitution and laws." To be successful in a § 1983 action, a plaintiff must demonstrate both that he or she was deprived of rights under the Constitution or other laws and that a defendant caused the deprivation while acting under color of law. *Block v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

A litigant relying on § 1983 must demonstrate that his or her claim is raised against a person acting under color of law. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)).

Plaintiff must show the Court how named Defendants acted under color of law to deprive him of Constitutional or other rights. As to the first requirement, the Court notes that law enforcement officers, while acting in their official capacity, may be subject to a § 1983 suit for use of excessive force. *See e.g. Smith v. Wilson Cty. Sheriff's Office*, No. 3:18-CV-00462, 2018 WL 3473966, at *3 (M.D. Tenn. July 18, 2018); *Deir v. Lake Cty.*, No. 1:12-CV-110, 2012 WL 1142467, at *2 (N.D. Ohio Apr. 4, 2012). The allegations contained in Plaintiff's complaint

involve the excessive use of force in the seizure and arrest of Plaintiff during the execution of a warrant for his arrest. Because the seizure of an individual while executing a warrant is the type of activity undertaken within the scope of policing, Defendants were undoubtedly acting under color of law while arresting Plaintiff.

The second requirement for proceeding requires Plaintiff to demonstrate how each of the Defendant officers' actions violated Plaintiff's rights under the Constitution or other law. Because this is a claim alleging police brutality, the Court considers the Fourth Amendment. As the Sixth Circuit has explained, "[t]he Fourth Amendment of the United States Constitution protects a person from being subjected to excessive physical force during the course of an arrest, a booking, or other police seizure." *Malory v. Whiting*, 489 F. App'x 78, 82 (6th Cir. 2012). Whether the allegations in the complaint rise to the level of "excessive force" for purposes of the Fourth Amendment require the Court to review the reasonableness of measures undertaken rather than a more intensive substantive due process review. *Slusher v. Carson*, 540 F.3d 449, 454 (6th Cir. 2008) (citing *Graham v. Connor,* 490 U.S. 386, 395 (1989)). The District Court, in explaining this analysis, has stated, "the reasonableness of a particular use of force must be judged from the perspective of an objectively reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Sequatchie Cty. Gov't*, No. 1:10-CV-20, 2011 WL 1305961, at *24 (E.D. Tenn. Apr. 4, 2011). Additionally, the Court is mindful in its review of the reasonableness of force alleged that "[e]ach defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010); *see e.g. Webb v. Knox Cty. Sheriff*, No. 3:19-CV-406-PLR-HBG, 2020 WL 5225673, at *2 (E.D. Tenn. July 6, 2020)*, report and recommendation adopted*, No. 3:19-CV-406, 2020 WL 5209850 (E.D. Tenn. Sept. 1, 2020) (claims against officers alleged to have assaulted a person under arrest could proceed while claims

against those not alleged to be a party to the assault could not). In reviewing an individual officer's culpability, the Plaintiff "must prove that the officer '(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force.'" *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).

Here, Plaintiff specifically alleges he was tasered after being taken to the ground by officers when they arrested him. He asserts that he was tasered in two separate parts of his back and in his genital area despite making it clear before he was tasered that he was not resisting officers' efforts to place him under arrest. Plaintiff further alleges that he was placed in handcuffs after being tasered and was punched three times in the nose by Lieutenant Larkins and hit once in the left ear by Deputy Williams, resulting in him losing consciousness. These factual allegations are sufficient to make out a claim against Deputy Williams and Lieutenant Larkins for their alleged active participation in injuring Plaintiff and against Deputy Sanders[2] for failing to intervene to protect Plaintiff during the incident despite having a duty to do so. The officers' conduct merits further factual development. *See Vaughn v. Caruthers*, No. 3:15-CV-00709, 2015 WL 6027833, at *4 (M.D. Tenn. Oct. 14, 2015) (allowing a pro se complaint to proceed where excessive force claims against officers were plausible).

### III. Conclusion.

For reasons set forth above, the Court **RECOMMENDS** that Plaintiff be permitted to proceed with his claims against Hawkins County Sheriff's Deputy Jesse Williams, Lieutenant Greg Larkins, and Deputy Brian Sanders.

---

[2] Plaintiff's Complaint does not clearly state that Deputy Sanders witnessed Plaintiff's alleged assault; however, at this stage of the proceedings there are sufficient allegations against the deputy for the Court to assume that he was present. This is especially true given that Plaintiff is proceeding pro se.

The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Larkins, Williams and Sanders. Plaintiff is **ORDERED** to complete the service packet and return the packet to the Clerk's Office within twenty (20) days of receipt of this Order. At that time, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service. Fed. R. Civ. P. 4. Service on Defendants shall be made pursuant to Rule 4(e) of the Federal Rules of Civil Procedure and Rule 4.04(1) and (10) of the Tennessee Rules of Civil Procedure, either by mail or personally if mail service is not effective. Plaintiff is forewarned that if he fails to timely return the completed service packet, this action will be dismissed.

Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If [any] Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against him.

Plaintiff is **ORDERED** to immediately inform the Court and Defendants/Defendants' counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

This matter is to be presented to the District Judge pursuant to this Report and Recommendation under the authority of *Gibson v. R.G. Smith Co.*, 915 F.2d 260, 263 (6th Cir. 1990), wherein the Court states that such matters proceed automatically to a district judge for

examination of the complaint after a magistrate judge has granted the petition to proceed *in forma pauperis*.[3]

                                              Respectfully submitted,

                                              s/ Cynthia Richardson Wyrick
                                              UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing the failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).